IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DENZZAIL CLIVE SMITH | NO. 2:25-CR-081-Z (01) |

## FACTUAL RESUME

In support of Denzzail Clive Smith's plea of guilty to the offense in Count Three of the Indictment, Smith, the defendant, James Ethan Colley, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count Three of the Indictment, charging a violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(i), that is, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*   That the defendant committed the crime alleged in Count Two; and

*Second.*  That the defendant knowingly possessed a firearm, and that possession was in furtherance of the defendant's commission of the crime charged in Count Two.

To prove the defendant possessed a firearm "in furtherance" of the drug-trafficking crime, the government must prove that the defendant's possession of the firearm furthered, advanced, or helped forward that crime.

To prove Possession with Intent to Distribute 500 Grams or More of

---

[1] Fifth Circuit Pattern Jury Instruction 2.44B (5th Cir. 2024 ed.).

**Denzzail Clive Smith**
**Factual Resume—Page 1**

Methamphetamine, the government must prove each of the following elements beyond a reasonable doubt:[2]

*First*: That the defendant knowingly possessed a controlled substance;

*Second*: That the substance was in fact methamphetamine;

*Third*: That the defendant possessed the substance with the intent to distribute it;

*Fourth*: That the quantity of the substance was at least 500 grams of a mixture of substance containing a detectable amount of methamphetamine.

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

## STIPULATED FACTS

1.   Denzzail Clive Smith admits and agrees that on or about February 20, 2025, in the Amarillo Division of the Northern District of Texas, and elsewhere, he did knowingly possess a firearm, to wit: a SCCY, model CPX-2, 9mm caliber handgun, serial number C503168, in furtherance of a drug trafficking crime, that is, Possession with Intent to Distribute 500 Grams or More of Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), an offense for which he may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Section 924(c)(1)(A), the penalty for which is found in Title 18, United States Code, Section 924(c)(1)(A)(i).

2.   On February 20, 2025, members of the Amarillo Police Department (APD) were conducting surveillance of the residence at 106 N.E. 11th Avenue #B, Amarillo,

---

[2]Fifth Circuit Pattern Jury Instruction 2.95A (5th Cir. 2024 ed.).

**Denzzail Clive Smith**
**Factual Resume—Page 2**

Texas. Officers had received information that a black male was distributing narcotics from the residence. During surveillance, officers observed a white 2023 Chevrolet Malibu rental car parked in the driveway. Officers observed a white female, later identified as Amanda White, and a black male with long dreadlocks, later identified as Denzzail Clive Smith, manipulating the dash of the rental car.

3. The white Malibu left the residence, and officers stopped the vehicle for a traffic violation. The driver, Amanda White, was arrested and interviewed. White admitted to delivering bundles of suspected methamphetamine to the residence on N.E. 11th Avenue in exchange for a large amount of cash. White admitted that the methamphetamine was hidden in the dash of the rental vehicle, and they had to dismantle the vehicle to remove it. During a search of the vehicle, Officers discovered $8,500 in a natural void inside the vehicle and $1,067 in the driver's purse. White also had a screw from the dash in her pocket. She described the bundles of methamphetamine as having been wrapped in green cellophane.

4. White allowed a review of her cellphone. On the phone, a Federal Bureau of Investigation Task Force Officer (FBI TFO) located texts between White and Bobby Dorsey, Jr. indicating that Dorsey, Jr. was the recipient of the methamphetamine that White delivered. The TFO also located a Cashapp transaction of $130 from an account by the name of "DEEZY LOCC". White explained that "Deezy Locc" was the long-haired male at the residence. She stated that the $130 payment was for gas for the rental car.

**Denzzail Clive Smith**
**Factual Resume---Page 3**

5. At approximately 5:37 p.m., APD officers executed a search warrant at the 11th Avenue residence. Officers knocked and announced, but no one answered. After 30 seconds, an armored vehicle was used to push the front door open. Officers located Randy Cox inside the residence. At the same time, an APD officer observed Smith exit the back door of the residence. Smith walked around the west side of the residence toward officers, and he was detained.

6. An officer conducted a pat down of Smith and discovered an empty handgun holster on Smith's waist and a handgun magazine containing ten 9mm rounds of ammunition. Smith also had a cellphone on his person. Smith told the officer that he had thrown a gun. Smith was the only person with long dreadlocks found at the residence. TFO Mincher searched the area around the residence and located a purple SCCY, model CPX-2, 9mm caliber handgun, serial number C503168, lying against the south wall of the residence where Smith had been walking.

7. During a search of the residence, officers located a large amount of U.S. currency, five baggies of white powder, seven blue pills, three rocks of crack cocaine, bundles wrapped in green cellophane containing 493.4 gross grams of methamphetamine, 24 baggies of methamphetamine with a combined gross weight of 281.3 grams, 34 baggies of methamphetamine with a combined gross weight of 381.3 gross grams, 21 baggies of methamphetamine with a gross weight of 83 gross grams, a white trash bag containing green packaging, and two razor blades.

8. Officers conducted an interview of Cox. Cox stated that Smith stayed at the residence the night before. Cox confirmed that Smith had a purple firearm. Cox stated that Smith had a CashApp account with the name "Deezy Locc."

9. Officers conducted an interview of Smith. An officer read Smith his *Miranda* warnings. Smith waived his rights and agreed to make a statement. During the interview, Smith denied knowing anyone at the house. He said that the occupants were just being kind and allowing him to stay inside and out of the cold. TFO Mincher noticed that Smith was wearing a chain with a large pendant that said, "DeezyLocc". Smith admitted that he goes by the name "Deezy Locc" because of his long dreadlocks. Smith also had "Deezy Locc" tattooed on his arm.

10. When asked about his CashApp account, Smith stated that he used to have one, but that he doesn't use CashApp anymore. Smith was told that officers would download Smith's iPhone, and Officer Mincher again asked about the Cashapp account. When asked if the app would be on the phone download, Smith stated, "I don't know, sir." Smith then asked for his inhaler and claimed to have abdominal pain. Smith stated that he didn't want to get into trouble. When asked about the white car parked in the driveway of the residence earlier in the day, Smith replied that he was just trying to get home to his kids. Smith asked what he needed to do for his life not to be messed up more than it was.

11. On February 24, 2025, the APD crime scene unit processed White's rental vehicle for fingerprints. A CSI officer lifted a fingerprint from the interior of the vehicle near the cupholder. That fingerprint was identified as the right thumbprint of Smith.

12. A search warrant was obtained for Smith's cellphone. In the phone, officers located the CashApp records for "Deezy Locc." On February 19, 2025, Smith received a text from Dorsey with the CashApp information for White. Following that text, Smith sent the $130 CashApp payment to White. Smith also shared text messages with Dorsey discussing the rental of the 11th Avenue residence.

13. TFO Mincher obtained the lease records to the 11th Avenue residence from the property owner. Smith leased the property on January 31, 2025.

14. On June 6, 2025, Dorsey was arrested in Amarillo, Texas, for his federal warrant. Officers conducted an interview with Dorsey. Dorsey told officers that Smith had made a connection with an Arizona based source of supply. He stated that Smith didn't have the motivation or ability to make the deal happen, so Dorsey just took over. Dorsey admitted to receiving pound quantities of methamphetamine from Arizona that White delivered. Dorsey admitted that Smith rented the 11th Avenue residence for the purpose of distributing drugs from it.

15. Some of the suspected methamphetamine seized from the residence was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The tested substance had a total net weight of 980.546 grams and a purity level of approximately 83-100 percent. This amount of methamphetamine is consistent with distribution, as opposed to someone's personal use.

16. The firearm found in Smith's possession was in close proximity to controlled substances and drug proceeds. Smith admits that he knowingly possessed the

**Denzzail Clive Smith**
**Factual Resume—Page 6**

firearm and that possession was in furtherance of his commission of the crime of possession with intent to distribute 500 grams or more of methamphetamine, or in furtherance of the commission of the crime of possession with intent to distribute 500 grams or more of methamphetamine by co-conspirators. That is, the firearm furthered, advanced, or helped forward the possession with intent to distribute methamphetamine because it could be used to protect the methamphetamine and any proceeds from the sale of that methamphetamine.

17. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Three of the Indictment.

AGREED TO AND STIPULATED on this 6th day of February, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

_____
Denzzail Clive Smith
Defendant

_____
ANNA MARIE BELL
Assistant United States Attorney
New Mexico State Bar Number 12501
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Tel: 806-324-2356
Fax: 806-324-2399
Email: anna.bell@usdoj.gov

_____
James Ethan Colley
Attorney for Defendant